# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

| | |
|---|---|
| **PAMELA GLENN** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| **GOODWILL INDUSTRIES OF** ) | |
| **MIDDLE TENNESSEE, INC.** ) | |
| ) | |
| Defendant. ) | **JURY DEMANDED** |
| ) | |

## COMPLAINT

1. This discrimination and retaliation action is brought by Plaintiff Pamela Glenn ("Ms. Glenn" or "Plaintiff") for violations of Title VII of the Civil Rights Act of 1964 (Title VII).

## PARTIES

2. Ms. Glenn is a fifty-three year old African American woman. She is also gay.

3. Goodwill Industries of Middle Tennessee, Inc. (Goodwill) is a nonprofit corporation that is affiliated with but operates independently from Goodwill Industries International.

4. Goodwill employs more than fifteen (15) employees.

5. Goodwill is headquartered at 937 Herman Street, Nashville, Tennessee 37208-3147. It can be served through its registered agent, Matthew Bourlakas, at that address.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

7. This Court has personal jurisdiction over Goodwill because its principal place of business is in Tennessee.

8. Venue is proper in the Middle District of Tennessee because the violations of law occurred in this judicial district.

9. Ms. Glenn has fulfilled all conditions precedent for all causes of action and received a Notice of Suit Rights related to her federal claims [Ex. 1 (Right to Sue Letter)].

10. This action is timely filed.

## FACTS

11. Ms. Glenn has worked at Goodwill for over eleven (11) years.

12. Ms. Glenn first worked as a box truck driver for around three (3) years picking up donations from homes.

13. After around three (3) years, Ms. Glenn drove box trucks in the transportation department.

14. After a couple years in the transportation department, Ms. Glenn worked her way up to driving the large trucks and still holds this position.

15. Before fall 2019, Ms. Glenn earned one hundred (100) percent evaluations and had never received any write-ups or complaints as an employee of Goodwill.

16. In September 2019, Ms. Glenn spoke to the Transportation Manager, Brent Bassham, about issues she had noticed on the job. These issues included male coworkers referring to female coworkers as "bitches" and urinating outside and in the presence of female coworkers. Ms. Glenn also expressed concern over three (3) temporary workers who were not keeping track of their time correctly.

17. Ms. Glenn planned to take her concerns to the HR department if Brent Bassham continued to neglect them.

18. Unbeknown to Ms. Glenn, Brent Bassham had told employee Sandra Boertmann a few months prior that he planned to "take down" Ms. Glenn.

19. After Ms. Glenn's first conversation with Brent Bassham, three temporary employees (the same employees she had expressed concern over) submitted complaints against Ms. Glenn.

20. Brent Bassham solicited at least one of these complaints.

21. On September 19, 2019 HR Representative Angela Bryant-Ware, who is African American, was assigned to investigate the complaints against Ms. Glenn.

22. On October 3, 2019 Angela Bryant-Ware interviewed employees David Troncalli, Ticaric Williams, and James Pullen, each of whom did not corroborate the complaints against Ms. Glenn, except to say that she and all other employees have cursed at work.

23. On October 4, 2019 Angela Bryant-Ware met with Ms. Glenn to discuss the complaints against her. During this meeting, Ms. Glenn told Angela of her September conversation with Bassham. This was the first time Angela had heard of the conversation and the harassment allegations. Ms. Glenn felt comfortable speaking with Angela of her concerns.

24. After Ms. Glenn's October 4, 2019 conversation with Angela Bryant-Ware, Brent Bassham started to assign trucks to Ms. Glenn that were unsafe to drive and not roadworthy.

25. In November 2019, Angela Bryant-Ware was removed from investigating Ms. Glenn's case and replaced by a new HR Representative, Rachel McKenzie, who is Caucasian. Ms. Glenn was not given a reason for the change.

26. On December 3, 2019, Ms. Glenn went to HR and started to tell Rachel McKenzie that Brent Bassham had been assigning her unsafe trucks. During this conversation, Ben Lyles, who at the time was the Senior Director of Transportation, handed Ms. Glenn a ten-year certificate, told her to sign it, and told her to go home. After Ms. Glenn asked, "Does this mean I'm fired?" Ben Lyles did not respond.

27. Uncertain if she had just been fired, Ms. Glenn did not return to work for three (3) days until Rachel McKenzie asked to meet with her on December 6, 2019.

28. At this meeting on December 6, 2019, Ms. Glenn received a Notice of Policy Violation for the first time in her over ten (10) years of working at Goodwill. However, Rachel McKenzie told Ms. Glenn that she would be paid for the three (3) days she had missed work.

29. In mid-December, 2019, Brent Bassham was fired for his handling of Ms. Glenn's case. Aaron Hood replaced Brent Bassham as Transportation Manager.

30. In December 2019, supervisor John Tucker made a sexual comment to employee Sandra Boertmann about the bathroom toilet (which is used by both males and females). He said that his "dick touched the water," referring to the size of his genitals.

31. After Sandra Boertmann notified Aaron Hood (who had replaced Brent Bassham), Ben Lyles and Aaron Hood held a meeting with Sandra Boertmann and John Tucker. During this meeting, John Tucker apologized to Sandra. No other action was taken against John Tucker.

4

Case 3:21-cv-00465   Document 1   Filed 06/15/21   Page 4 of 11 PageID #: 4

32. Around one month after this incident, Sandra Boertmann was fired.

33. In January 2020, Ms. Glenn was tying her shoe, in a bent position, when supervisor John Tucker walked up behind her and said, "I started to smack your ass." When Ms. Glenn at first did not respond to his comment, Tucker reiterated the same statement. Employee Michael Smith witnessed this incident.

34. On March 17, 2020, Ms. Glenn wrote a charge of discrimination with the EEOC. This charge included the harassing work environment that she had first complained to Brent Bassham about in September 2019, Brent Bassham's "bogus investigation" and assigning her unsafe trucks, the December 6, 2019 write-up, and John Tucker's January 2020 behavior.

35. On March 18, 2020, Angie Crompton reached for truck keys when employee Steve Bertardo pushed her aside and called her a "fucking bitch cunt." Dispatch supervisor Will Jennings witnessed this but failed to write a statement. Employee Justin Foxx wrote a statement because Will Jennings failed to write one.

36. Also in March 2020, employee Angie Crompton, who had just started working at Goodwill, reached into a rolling storage container, exposing a blue undershirt. Dispatch supervisor Will Jennings said, "I wonder if you're that color all over." Then employee Frederick Sutherland added, "She has a blue thong on."

37. In May 2020, HR Representative Rachel McKenzie asked Ms. Glenn, "What can we do to make this (the EEOC charge) go away?"

38. In May 2020, coworker O'Keith Perkins and Ms. Glenn were getting their work uniforms when he told her that his "dick is too long" for the uniform pants, grabbing his genitals as

he made this statement. Employee Angie Crompton witnessed this incident. She said, "Is talking about their dicks all they do around here? It must be a part of their culture."

39. On June 2, 2020, employee Roger Sutton popped the hood on Ms. Glenn's truck and let it back down without locking it. This incident was taken on video.

40. If Ms. Glenn had not checked the hood as a safety precaution before driving, she would have driven the truck with a loose hood, resulting in damage to the truck. Damaging the truck would have resulted in disciplinary actions against Ms. Glenn.

41. On June 9, 2020, Ms. Glenn told supervisor Aaron Hood that her hood had been loose when she checked it a few days prior. Aaron Hood showed Ms. Glenn the video of Roger Sutton tampering with the hood of the truck.

42. No disciplinary actions were taken against Roger Sutton.

43. The date to mediate Ms. Glenn's charge was July 14, 2020. Ms. Glenn exercised her right not to mediate on July 14, 2020.

44. On July 20, 2020 employee Shane Bassett and Aaron Hood engaged in a conversation. Bassett said that he "didn't understand gay people," to which Hood replied that he didn't like gay people and they "should all be taken out and shot." Employee Ticaric Williams heard this conversation. Ms. Glenn is the only openly gay employee at Goodwill.

45. On July 22, 2020 Aaron Hood gave Ms. Glenn a "Corrective Suspension" letter as a "final warning" before termination and suspended her for three (3) days without pay.

46. This letter states that Ms. Glenn has "continued to demonstrate disrespectful behavior" and "made accusations against Goodwill and employees that are not in good faith," in reference to the January 2020 incident with John Tucker.

47. On August 18, 2020 Ms. Glenn was talking with a coworker, John Covington, when coworker Justin Foxx, standing several yards away, told Angie Crompton, "Don't go over there, that's the gay section." Ms. Glenn believes Foxx assumed John Covington was gay because he was talking with her.

48. In August 2020, Leslie Crompton applied for the box truck driving job. She was told that only men would be driving the box truck from then on.

49. On September 2, 2020, coworker O'Keith Perkins called Ms. Glenn a "bitch" as their trucks passed each other. Ms. Glenn notified her supervisor immediately. No action was taken against O'Keith Perkins.

50. On February 8, 2021 employee Anderson White showed his middle finger to Ms. Glenn and walked away.

51. All of the foregoing circumstances caused Ms. Glenn severe emotional distress, mental anguish, and anxiety. A reasonable person in the same circumstances would also experience emotional distress, mental anguish, and anxiety.

52. An EEOC Right to Sue Letter dated March 17, 2021, was mailed to Ms. Glenn. [Ex. 1 (Right to Sue Letter)].

## CAUSES OF ACTION

Ms. Glenn incorporates all paragraphs above as if set forth in each count below.

## Count 1: Discrimination in Violation of Title VII of the Civil Rights Act of 1964, As Amended

53. As a Black, gay, female, Ms. Glenn is a member of more than one protected class.

54. Ms. Glenn was subject to unwelcome harassment by a continuous environment where male coworkers refer to the women as "bitches," urinate in their presence, draw attention to their genitals, and regularly make offensive remarks that are sexual in nature.

55. Upon information and belief, this harassment was based on Ms. Glenn's sex.

56. This harassment created a hostile work environment because it unreasonably interfered with Ms. Glenn's work performance, causing her to speak to Brent Bassham of these issues.

57. After Ms. Glenn engaged in a protected activity by speaking with Brent Bassham, she was subjected to further harassment by his HR investigation founded on baseless claims and a baseless December 6, 2019 write-up, which she had never received in over a decade of working at Goodwill.

58. Upon information and belief, this harassment was based on her race and sex.

59. After Ms. Glenn engaged in another protected activity by filing an EEOC charge, she was subjected to further harassment when (1) her truck was tampered with and (2) Aaron Hood suspended her in July 2020 based on her EEOC charge.

60. Upon information and belief, the failure to discipline the employee who had tampered with her truck and the July 2020 suspension was based on her sexual orientation and her sex.

61. The baseless HR investigation, the write-up, the tampering with her truck, and the suspension unreasonably interfered with Ms. Glenn's work performance, creating a hostile work environment.

62. After Ms. Glenn spoke to Brent Bassham in September 2019, Goodwill was put on notice that its work environment was harassing in nature.

63. Goodwill did not act reasonably to correct the harassing behavior because when HR Representative Angela Bryant reached out to Ms. Glenn and spoke to her in October 2019, she had learned for the first time of the harassment complaints.

64. The harassing nature of the work environment was not corrected and still continued.

65. Aaron Hood showed indifference and unreasonableness by failing to discipline the co-worker who had tampered with Ms. Glenn's truck.

66. Aaron Hood also showed indifference and unreasonableness by suspending Ms. Glenn in July 2020 for three (3) days because she filed an EEOC charge for John Tucker's January 2020 behavior.

67. Based on these circumstances, Goodwill created a hostile work environment in which Ms. Glenn experienced severe distress, mental anguish, and anxiety, which a reasonable person under the same circumstances would experience.

**Count 2: Retaliation in Violation of Title VII of the Civil Rights Act of 1964, As Amended**

68. Ms. Glenn engaged in a protected activity when she spoke with Brent Bassham in September 2019.

69. Ms. Glenn engaged in a protected activity when she spoke with HR Representative Angela Bryant in October 2019.

70. Brent Bassham knew of these protected activities.

71. Brent Bassham subjected Ms. Glenn to severe and pervasive retaliatory harassment by starting an HR investigation against her in efforts to "take her down" and assigning her trucks to drive that were in unsafe and unroadworthy conditions.

72. Brent Bassham's HR investigation against Ms. Glenn occurred within weeks, if not days, of her protected activity, establishing a causal connection.

73. Brent Bassham's assigning Ms. Glenn unsafe trucks only started after her conversation with Angela Bryant, establishing a causal connection.

74. Ms. Glenn engaged in a protected activity when she filed an EEOC charge on March 17, 2020.

75. Aaron Hood knew of this protected right.

76. Aaron Hood took adverse employment against Ms. Glenn by suspending her on July 22, 2020 for "accusations against Goodwill employees."

77. Suspending Ms. Glenn in reference to the "incident" between her and John Tucker, which was on her EEOC charge, establishes a causal connection.

78. Goodwill's retaliation against Ms. Glenn caused her to experience severe distress, mental anguish, and anxiety, which a reasonable person under the same circumstances would experience.

## **PRAYER FOR RELIEF**

WHEREFORE Ms. Glenn prays that this Court:

1. Declare the conduct engaged in by Defendant Goodwill to be in violation of Ms. Glenn's rights;

2. Award Ms. Glenn compensatory damages, including, but not limited to lost pay, including back and front pay, and damages for emotion stress, mental anguish, humiliation, and any damages she is entitled to for physical pain and discomfort suffered due to Goodwill's mistreatment of her;

3. Award Ms. Glenn punitive damages;

4. Award Ms. Glenn reasonable costs and attorney's fees; and

10
Case 3:21-cv-00465   Document 1   Filed 06/15/21   Page 10 of 11 PageID #: 10

5. Grant such other relief be deemed just and proper by this court.

Further, Ms. Glenn demands a jury trial on all claims so triable.

Respectfully submitted,

FREEMAN & FUSON


**/s/ Mark Freeman**
Mark T. Freeman, Esq. (#16098)
2126 21st Avenue South
Nashville, TN 37212
Phone (615) 298-7272
Fax (615) 298-7274
mark@freemanfuson.com
*Attorney for Plaintiff*