IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| PAMELA GLENN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 3:21-cv-00465 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| GOODWILL INDUSTRIES OF MIDDLE | ) | |
| TENNESSEE, INC., | ) | |
| | ) | |
| Defendant. | | |

## **MEMORANDUM OPINION**

Pending before the Court is a motion for summary judgment (Doc. No. 18, "Motion") filed by Defendant, Goodwill Industries of Middle Tennessee, Inc., wherein Defendant seeks summary judgment in its favor against Plaintiff, Pamela Glenn, on all counts in Plaintiff's complaint (Doc. No. 1, "Complaint"). Defendant filed a memorandum in support of the Motion (Doc. No. 19, "Memorandum") and a statement of facts (Doc. No. 20, "Defendant's Statement of Facts"). Plaintiff filed a response in opposition to the Motion (Doc. No. 23, "Response"), and Defendant filed a reply (Doc. No. 24, "Reply").

For the reasons stated herein, Defendant's Motion will be DENIED.

## LEGAL STANDARD

### I. **Summary Judgment Standards, Generally.**

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is

that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In other words, even if genuine, a factual dispute that is irrelevant under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Reeves v. Swift Transp. Co.*, 446 F.3d 637, 640 (6th Cir. 2006) (citing *Anderson*, 477 U.S. at 248), *abrogated on other grounds by Young v. United Parcel Serv.*, 575 U.S. 206 (2015). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Alternatively, the moving party may meet its initial burden by otherwise "show[ing]"—even without citing materials of record—that the nonmovant "cannot produce admissible evidence to support the [existence of a] material fact," Fed. R. Civ. P. 56(c)(1)(B), for example, the existence of an element of a nonmovant plaintiff's claim. If the summary judgment movant meets its initial burden, then in response the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Pittman*, 901 F.3d at 628 (quoting *Anderson*, 477 U.S. at 250).[1] Importantly, "[s]ummary judgment for a defendant [that has met its initial burden as the movant] is appropriate when the plaintiff 'fails to make a showing

---

[1] Courts (appropriately) at times refer interchangeably to (i) a party being able (or unable) to raise a genuine issue as to fact and (ii) a reasonable jury being able (or unable) to find in the party's favor on that fact. This Court does likewise herein.

sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial.'" *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 805–06 (1999) (quoting *Celotex,* 477 U.S. at 322).

Any party asserting that a fact cannot be or genuinely is disputed (*i.e.*, any party seeking summary judgment and any party opposing summary judgment, respectively) can support the assertion either by: (a) citing to materials in the record, including, but not limited to, depositions, documents, affidavits, or declarations, Fed. R. Civ. P. 56(c)(1)(A), or (b) "showing" (i) that the adverse party cannot produce admissible evidence to raise a genuine dispute as to that fact or (ii) that contrary to the claim of the adverse party, the materials cited by the adverse party do not actually establish the absence or presence (as the case may be) of a genuine dispute as to that fact. Fed. R. Civ. P. 56(c)(1)(B).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (citing *Anderson*, 477 U.S. at 248). Likewise, the "court should view the facts and draw all reasonable inferences in favor of the non-moving party." *Pittman*, 901 F.3d at 628 (citing *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018).

As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment;

rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

A defendant-movant cannot meet its initial burden on motion for summary judgment merely by *claiming* that the plaintiff lacks evidence and essentially challenging the plaintiff to show otherwise; a defendant-movant must—by pointing to materials of record or otherwise—*show* (presumptively, subject to the plaintiff's response) that the plaintiff could not prove his claim by a preponderance. *See* Fed. R. Civ. P. 56(c)(1).[2] In other words, the defendant-movant must produce evidence *tending to show* (though not necessarily *conclusively showing*) that the plaintiff cannot raise a genuine issue as to any material fact.[3] *Nickols v. Morris*, 705 F. Supp. 2d 579, 584–85 (N.D. Tex. 2010) ("The party moving for summary judgment has the initial burden of informing the Court of the basis for his motion and producing evidence which tends to show that no genuine issue as to any material fact exists and that he is entitled to judgment as a matter of law."), *aff'd*, 419 F. App'x 534 (5th Cir. 2011).

---

[2] The undersigned rejects cases that have indicated otherwise. *See, e.g.*, *O.M.A., S.r.l. v. Simon DeYoung Corp.*, No. 1:10CV0861, 2013 WL 7210503, at *3 (N.D. Ohio Mar. 12, 2013) ("[A summary judgment] movant in federal court is not required to . . . provide evidence to show that his opponent has no evidence"), *R&R adopted in part, rejected in part on other grounds*, No. 1:10 CV 00861, 2014 WL 587171 (N.D. Ohio Feb. 14, 2014); *Goldcorp, Inc. v. United States*, No. 00-75043, 2002 WL 551042, at *6 (E.D. Mich. Mar. 27, 2002) ("At any rate, even if [the] affidavit were altogether stricken from the record, it appears that the Government still would be entitled to summary judgment in its favor. After all, this affidavit has been provided merely to prove a negative: namely, that there is no evidence that the IRS ever received the protective claim allegedly sent by Plaintiff on or before September 15, 1995. Presumably, then, the Government could have simply asserted this proposition in its brief, and left it to Plaintiff to introduce evidence calling this issue into question.").

[3] Notably, a defendant-movant typically can show that there is no genuine issue as to any material fact by showing that there is no genuine issue as to the existence of a fact (usually, the element of a claim) that absolutely needs to exist for the plaintiff to prevail. If the defendant-movant can make this showing, all other facts become immaterial (because the plaintiff necessarily will suffer summary judgment anyway), and thus it can be said that the plaintiff (being unable to show a genuine issue as to *one* material fact) cannot raise a genuine issue as to *any* material fact.

On a motion for summary judgment, a party may object that the supporting materials specified by its opponent "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Upon such an objection, the proponent of the supporting material must show that the material is admissible as presented or explain how it could be presented in a form that would be admissible. *Thomas v. Haslam*, 303 F. Supp. 3d 585, 624 (M.D. Tenn. 2018); *Mangum v. Repp*, 674 F. App'x 531, 537 (6th Cir. 2017) (citing Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment).

## II    Summary Judgment Standards as Relevant to the *McDonnell Douglas* Framework

The Court will provide here[4] an overview of the so-called *McDonnell Douglas* framework (a special device for adjudicating employment discrimination and retaliation claims) and its applicability to motions for summary judgment in particular.[5] The Sixth Circuit has summarized the applicability and workings of the *McDonnell Douglas* burden-shifting framework (in a case

---

[4] And elsewhere below, the Court will discuss in much greater detail the *McDonnell Douglas* framework, particularly as it is to be applied in the summary-judgment context.

[5] *McDonell Douglas* was an appeal after a bench trial, not an appeal after a decision on a motion for summary judgment. In the view of the undersigned, this is important to keep in mind, because it explains why a court addressing a motion for summary judgment cannot just plunk down the language from *McDonnell Douglas* and apply it just as written, without accounting for the specific burden-shifting analysis required on every summary-judgment motion; it is vital that when the *McDonnell Douglas* framework is used on a summary-judgment motion—something Justice Thomas seriously doubts should ever happen, *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 322 (2025) (Thomas, J., concurring)—the framework be modified to account for the legal standard applicable to summary judgment motions. *Id.* at 323 ("If courts are to apply *McDonnell Douglas* at summary judgment, they must modify the framework to match the applicable legal standard.") Herein, and per its usual practice, the undersigned has done its level best to make such modifications—sometimes expressly, sometimes not expressly, but always with intentionality.

Such modifications are not particularly easy to make (or explain), due to the "complex issues related to the interplay of the summary judgment standard and *McDonnell Douglas*." *Qualls v. Regents of the Univ. of California*, No. 113CV00649LJOSMS, 2015 WL 6951757, at *3 (E.D. Cal. Nov. 10, 2015). The complexity arises from the fact that the Court must layer one burden-shifting framework (the summary-judgment standard) on top of another burden-shifting framework (*McDonnell Douglas*).

that happened to involve Title VII discrimination claims in particular, as does the instant case) as follows:

> A plaintiff may show discrimination by direct evidence, or a plaintiff lacking direct evidence of discrimination may succeed on a Title VII claim by presenting indirect evidence under the framework first set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802–03, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973).
>
> To succeed under the *McDonnell Douglas* framework, the plaintiff must first make out a *prima facie* case of discrimination by a preponderance of the evidence. . .. Once the plaintiff makes out a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for" the adverse employment action. Should the defendant do so, the plaintiff then must prove by a preponderance of the evidence that the stated reasons were a pretext for discrimination.

*Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606–07 (6th Cir. 2019) (citations omitted).

The Sixth Circuit expounds on the respective burdens on the parties in the context of *McDonnell Douglas* in the following manner:

> [When a] discrimination plaintiff bases his case on indirect evidence (i.e., evidence requiring inferences to reach the conclusion that the defendant discriminated against the plaintiff), we apply the burden-shifting framework first set forth in *McDonnell Douglas v. Green,* 411 U.S. 792, 802–05, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). *Rowan,* 360 F.3d at 547; *Town v. Mich. Bell Tel. Co.,* 455 Mich. 688, 568 N.W.2d 64, 67–68 (1997). "On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 661 (6th Cir. 2000) (applying the *McDonnell Douglas* framework to a sex-discrimination claim). Thus, the plaintiff must first submit evidence from which a reasonable jury could conclude that he or she established a prima facie case of discrimination. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996) (applying the *McDonnell Douglas* framework to a disability-discrimination claim). The defendant must then offer admissible evidence of a legitimate, nondiscriminatory reason for its action. *Id.* If the defendant does so, the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination. *Id.* Although the burdens of production shift, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L.Ed.2d 207 (1981).

*Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524 (6th Cir. 2007), *overruled on other grounds*, *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 179 (2009).

The burden-shifting approach in *McDonnell Douglas* applies only to discrimination or retaliation claims premised on so-called indirect (i.e., circumstantial) evidence.[6] *Redlin,* 921 F.3d at 606–07. The undersigned previously has explained how the *McDonnell Douglas* framework functions in the context of a defendant's motion for summary judgment:

> When a defendant-movant challenges a plaintiff's ability to reach a jury on an indirect-evidence theory of employment discrimination, there are a number of steps potentially implicated, though not all of them necessarily need be addressed in the analysis. The number of steps to be addressed depends on whether the defendant-movant seeks to prevail at the first step, or at the second and third step, or at both the first step and the second and third step . . .
>
> To prevail at the first step of *McDonnell-Douglas*, the defendant, as the summary-judgment movant, must meet its initial burden of showing an absence of evidence from which a reasonable jury could find the plaintiff established a *prima facie* case. *E.g., Banks v. State of Ohio*, No. 94–3866, 1995 WL 118993, * 2 (6th Cir. Mar. 20, 1995). If the defendant does so, then the burden shifts to the plaintiff to show that at trial it could "make out a *prima facie* case of discrimination by a preponderance of the evidence." *Redlin*, 921 F.3d at 606. If the plaintiff fails to succeed here, then the plaintiff suffers summary judgment in favor of the defendant on the claim. But if the plaintiff succeeds here, defendant does not prevail at the first step and is relegated to try instead to prevail at the second and third steps of *McDonnell-Douglas.*
>
> At the second step, the defendant-movant has the burden (of production only) to show a legitimate and non-discriminatory reason for its action(s). *Brown*, 814 F. App'x at 80 (noting, on the defendant's motion for summary judgment that it is a "burden of production [that potentially] shifts to the defendant to show a legitimate, nondiscriminatory reason for the way it treated the plaintiff"). If the defendant successfully shows evidence of a non-discriminatory reason for its alleged discriminatory act, the court proceeds to the third step, where "the plaintiff must rebut the proffered reason by producing evidence from a which a reasonable jury could conclude that the proffered reason is actually a pretext" for unlawful

---

[6] "Direct evidence is such that, if true, requires the conclusion that unlawful retaliation [or discrimination] was a motivating factor without any inferences or presumptions." *Banks v. Bosch Rexroth Corp.*, 15 F. Supp. 3d 681, 693 (E.D. Ky. 2014), *aff'd*, 610 F. App'x 519 (6th Cir. 2015) (citing *Norbuta v. Loctite Corp*., 181 F.3d 102 (6th Cir. 1999)). Indirect evidence is evidence that requires the court to make inferences to conclude that unlawful retaliation or discrimination was a motivator for an adverse employment action.

discrimination. *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 807 (6th Cir. 2020) (quotations omitted).

*Veith v. Tyson Fresh Meat, Inc.*, No. 3:19-CV-01065, 2022 WL 1231229, at *9-10 (M.D. Tenn. Apr. 26, 2022) (Richardson, J.).

Notably, at the third and final stage of *McDonnell Douglas*, the question on *summary judgment* (as opposed to a bench trial) is not whether *the court finds* pretext by a preponderance of the evidence, but rather whether *a reasonable jury could find* pretext by a preponderance of the evidence. *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 323 (2025) (Thomas, J., concurring) ("[A]t the third step [on a motion for summary judgment, the question for the court cannot be [as suggested by *Burdine*, which was on appeal from a bench trial] whether the plaintiff has 'prove[d] by a preponderance of the evidence that the legitimate reasons offered by the defendant . . . were a pretext for discrimination.' *Burdine*, 450 U.S. at 251. Instead, the plaintiff need only present sufficient evidence to create a 'genuine dispute as to" whether the employer's stated reason was pretextual.' Rule 56(a)"); *Hopkins v. Canton City Bd. of Educ.*, 477 F. App'x 349, 358 (6th Cir. 2012) (stating on motion for summary judgment in Title VII case, "at the pretext stage [the plaintiff must show that a reasonable jury could infer that the [defendant's] professed reasons are unworthy of credence."); *Bell v. Runyon*, No. CIV. 96-374 (TFH), 1997 WL 540814, at *3 n.1 (D.D.C. July 17, 1997) (stating on motion for summary judgment in Title VII case, "[t]he Court agrees with plaintiff that he need not, at this stage, demonstrate pretext by a preponderance of the evidence. He must, however, present sufficient evidence that a reasonable jury could find pretext by a preponderance of the evidence.") *aff'd*, No. 97-5245, 1998 WL 65536 (D.C. Cir. Jan. 30, 1998). For ease of discussion, however, the Court herein generally will refer to the plaintiff's pretext-related burden simply as preponderance of the evidence, without specifically referring to the fact that "preponderance of the evidence" is viewed from the vantage point of what a reasonable jury

*objectively could find*, and not from the vantage point of what the undersigned district judge *subjectively does find*.

In the Court's view, what the summary judgment analysis boils down to, stated as concisely as possible (which, alas, is not particularly concise), is set forth in the following paragraph.

To obtain summary judgment on Title VII claims grounded exclusively on the so-called "indirect-evidence" theory, the defendant must either:

> (i) show that there is no genuine issue of material fact as to at least one of the elements of the plaintiff's *prima facie* case (such that the defendant necessarily is entitled to judgment as a matter of law based on the absence of that element); *or*, failing that,
> (ii) (a) make an evidentiary showing[7] adequate to support a finding that there was a legitimate, nondiscriminatory reason for its alleged actions <u>and</u> then (b) have the plaintiff fail to raise a genuine issue of material fact as to pretext (such that the defendant necessarily is entitled to judgment as a matter of law based on the absence of pretext).

On the other hand, the plaintiff will avoid summary judgment if:

> (i) either (a) the defendant fails to meet its initial burden to show the lack of a genuine issue of material fact as to any or more elements of the plaintiff's indirect-evidence *prima facie* case, *or* (b) the plaintiff presents sufficient evidence to demonstrate a genuine issue of material fact as to any element(s) of such *prima facie* case as to which the defendant met its initial burden to show the lack of a genuine issue of material fact; <u>and</u>

> (ii) either (a) the defendant cannot make an adequate evidentiary showing of a legitimate, nondiscriminatory reason for its alleged actions, or, if the defendant can make such a showing, or (b) the plaintiff demonstrates that there is a genuine issue of material fact as to pretext.[8]

---

[7] To be clear, the requirement here is not merely to *articulate* a legitimate reason, but also (as discussed below) to *present evidence* that the articulated legitimate reason was in fact the reason.

[8] As indicated below, courts' references to a plaintiff's (conditional) requirement to show "pretext" is actually a (conditional) requirement to show not just pretext (*i.e.*, that the claimed reason was provided to conceal the real reason) but also to show that the real reason was of an unlawful, discriminatory nature.

As will be further discussed below, only Plaintiff's Title VII claim of retaliation[9] is subject to the *McDonnell Douglas* framework.

## III.    Summary Judgment Standards as Relevant to Direct Evidence

As an alternative to indirect evidence, a plaintiff seeking to establish a claim of discrimination or retaliation, by which the Court here[10] means a claim that the plaintiff suffered *an adverse employment action based on discriminatory o retaliatory animus*, may seek to establish her case via direct evidence. Notably, the Court here is drawing a distinction between a claim of discrimination or retaliation on the one hand, and a claim of hostile work environment on the other hand; the latter kind of claim is outside the scope in this section III and is dealt with elsewhere herein. Also, the Court notes that although the case discussed in this section is framed in terms of

---

[9] It is worth noting, however, that the Sixth Circuit has held that "[t]he *McDonnell Douglas* burden-shifting approach . . .  applies to hostile-work-environment claims." *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007). This holding seems debatable insofar as *McDonnell Douglas* burden-shifting is geared towards exploring an employer's reasons for making a particular *decision* (taking a particular adverse employment action), as opposed to the employer's reasons for merely allowing certain actions to occur. A claim of hostile work environment does not require (and often would not involve) any *decision by the employer*; the wrongful conduct underlying a claim of hostile work environment thus could be unrelated to the kind of employer *decision-making* that *McDonnell Douglas* seems concerned with. in such a case, it seems strange to ask whether the employer had a legitimate and non-discriminatory reason for such failure, because in some cases the failure would not involve any decision at all and, if it did involve a decision, would be a decision that almost surely not be justified by some legitimate reason. So, in some contexts, the Sixth Circuit rule may be difficult, and seem a touch non-sensical, to apply. But the undersigned of course recognizes this as binding precedent and thus applies it.

One thing is certain: if a plaintiff can make an adequate showing of the elements of what the Sixth Circuit has described as an indirect-evidence *prima facie* case of hostile work environment, then the defendant-movant typically will have a difficult time satisfying its burden at step two of *McDonnell Douglas*. In such cases, step one of *McDonnell-Douglas effectively* will be determinative of whether the defendant obtains summary judgment on the claim, almost as if the elements at issue were the elements not of merely an indirect-evidence *prima facie* case, but the elements of a claim that (like most claims under the law) does not involve *McDonnell Douglas* and thus are sufficient to establish the claim without any additional analysis of the kind required (at step two and potentially step three) of *McDonnell Douglas*.

[10] The Court uses these shorthand terms in order to be precise as to what kinds of claims it is talking about and the distinctions between them. It is fully aware that retaliation and harassment in violation of Title VII are each sometimes referred to as a form of discrimination. But for current purposes, the Court uses the term "discrimination" as it has defined it above, with the understanding that most legal principles applicable to "discrimination" as thus defined are likewise applicable to retaliation because easy parallels can be drawn between class-based animus and retaliatory animus.

*discrimination* (i.e., adverse employment actions taken against persons based on their membership in a protected class), the discussion is equally applicable to *retaliation (*i.e., adverse employment actions taken against persons based on their having engaged in conduct that is protected by Title VII). Notably, only *retaliation*, and not *discrimination*, is alleged in this case; Count 1 is claim of hostile work-environment (not discrimination as the Court has defined it for current purposes).

"[D]irect evidence is evidence which, if believed, 'requires the conclusion that unlawful discrimination was at least a motivating factor.'" *Bartlik v. U.S. Dep't of Lab.*, 73 F.3d 100, 103 n.5 (6th Cir. 1996) (quoting *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1248 (6th Cir. 1995)). "Consistent with this definition, direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003). When there is direct evidence, "the existence of unlawful discrimination is 'patent.'" (*Id.*). In other words, direct evidence is evidence that shows patently that the allegedly unlawful actions were motivated by animus against persons in protected classes, rather than solely by other considerations.

"'Whatever the strength of the evidence, it is not "direct" evidence if [it] admits more than one plausible interpretation, and requires a significant inference or presumption on the part of the trier of fact.'" *Kocak v. Cmty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 470 (6th Cir. 2005) (quoting *Norbuta v. Loctite Corp.,* 1 Fed. Appx. 305, 313 (6th Cir. 2001)). If an inference is required to draw from the evidence the conclusion that an employer had an animus against a protected class—for example, if an inference is required to reach the conclusion that a comment refers to a protected class or the plaintiff's membership in a protected class—then the evidence is not direct evidence. *Zivkovic v. Juniper Networks, Inc.*, 450 F. Supp. 2d 815, 825 (N.D. Ohio

2006). And to be direct evidence, "the evidence must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [race], but also that the employer acted on that predisposition." *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 488 (6th Cir. 2000).

"Direct evidence of discrimination is rare because employers generally do not announce that they are acting on prohibited grounds." *Erwin,* 79 F. App'x at 896–97. "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003).

"Direct evidence and circumstantial evidence claims run on parallel tracks, and therefore failure to sustain a claim under one framework does not undermine the other." *Erwin*, 79 F. App'x at 899. Another way to put it is to say that a plaintiff can establish a *prima facie* case of discrimination not only by establishing the defined elements of an indirect-evidence *prima facie* case, but alternatively by presenting evidence that qualifies as direct evidence of discrimination.[11] The upshot is that a plaintiff at the summary-judgment stage has the option of meeting her burden

---

[11] Often, courts seemingly speak as if the only kind of *prima facie* case of discrimination is an indirect-evidence *prima facie* case. But other cases imply that the presentation of direct evidence functions to establish a (different kind of) *prima facie* case of discrimination. *See e.g.*, *Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 911 (6th Cir. 2009) ("As in the direct evidence context, a plaintiff relying on indirect evidence still must make a *prima facie* showing of discrimination."); *Laderach v. U-Haul of Nw. Ohio*, 207 F.3d 825, 830 (6th Cir. 2000) ("[D]irect evidence of discrimination merely suffices to establish a *prima facie* case, which shifts the burden of production to the employer to come forward with a non-pretextual reason for its decision[.]") (Norris, J., concurring); *Thompson v. Hendrickson USA, LLC*, No. 3:20-CV-00482, 2021 WL 848694, at *19 n.20 (M.D. Tenn. Mar. 5, 2021) ("Plaintiff might meet her *prima facie* case in various ways, including via direct evidence[.]") (Richardson, J.); *Woodsmall v. Eclipse Mfg. Co.*, 249 F. Supp. 2d 918, 923 (E.D. Tenn. 2002) ("[P]laintiff has sustained his burden of demonstrating a *prima facie* case of discrimination with direct evidence. . . . . In the alternative, Woodsmall can establish a *prima facie* case of discrimination based upon circumstantial evidence."). The Court agrees with such cases; to establish a *prima facie* case means, essentially, to establish a case preliminarily, subject to the other side's opportunity (and requirement) to rebut that case. And that is exactly what a plaintiff does *either* by presenting direct evidence *or* by establishing each of the elements of an indirect *prima facie* case under *McDonnell Douglas*.

by showing direct evidence, indirect evidence, or both kinds of evidence. *See e.g.*, *Weigel v. Baptist Hosp. of E. Tennessee*, 302 F.3d 367, 381–82 (6th Cir. 2002) ("It is well settled that if a plaintiff presents direct evidence of discrimination, she need not proceed under the *McDonnell Douglas* formula." (citation omitted)); *Hicks v. U.S. Off. of Pers. Mgmt.*, No. 2:05CV100, 2006 WL 8441765, at *2 (S.D. Ohio June 20, 2006) ("In a case alleging employment discrimination in violation of Title VII, a plaintiff can withstand a motion for summary judgment either by presenting direct evidence of discrimination or circumstantial evidence from which a jury may infer a discriminatory motive."); *Diaz v. City of Inkster*, No. CIVA05-CV-70423-DT, 2006 WL 2192929, at *9 (E.D. Mich. Aug. 2, 2006) ("Plaintiff's presentation of direct evidence means that the burden-shifting paradigm (for indirect evidence) does not apply.").[12]

A decisionmaker is one who "exercised supervisory authority, imposed discipline, and influenced hiring and firing at the company . . . The management determination is not confined to labels but rather must be assessed in light of functions." *EEOC v. Ralph Jones Sheet Metal, Inc.*, 777 F. Supp. 2d 1119, 1124 (W.D. Tenn. 2011). But that is not to say that comments constitute direct evidence of discrimination merely because they were made by a supervisor or

_____

[12] The quote from *Diaz* calls to mind an important distinction. If the plaintiff presents direct evidence, then (as *Diaz* states) the burden-shifting paradigm *for indirect evidence* does not apply, but a different kind of burden-shifting does apply. Specifically, "[w]hen a plaintiff establishes discrimination through direct evidence, the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive." *Blair*, 505 F.3d at 523. This one-step, uni-directional burden-shifting is not the potentially two-step and bi-directional burden-shifting prescribed by *McDonnell Douglas*, but it is a kind of burden-shifting nonetheless. It is important to keep these differences in mind. *See Erwin v. Potter*, 79 F. App'x 893, 899 (6th Cir. 2003) ("Therefore, the district court erred when it stated that under both direct and circumstantial evidence methods of proof, [the plaintiff] must 'show that his age was a determining factor in his termination.' To the contrary, under the direct evidence approach, the [defendant] must show a legitimate reason for terminating [the plaintiff]'s employment that was not related to his age."). But this is admittedly difficult to keep in mind when no less of an authority than the Sixth Circuit has expressly (but, alas, imprecisely and confusingly) described a direct-evidence theory as distinguishable from an indirect evidence (*McDonnell Douglas*) theory on the ground that the latter (and only the latter) is a "burden-shifting theory." *See Briggs v. Potter*, 463 F.3d 507, 514 (6th Cir. 2006).

decisionmaker. Indeed, in many cases a supervisor's comments have been found not to constitute direct evidence. *Worthy v. Michigan Bell Tel. Co.*, 472 F. App'x 342, 343 (6th Cir. 2012); *Hopkins v. Elec. Data Sys. Corp.*, 196 F.3d 655, 661 (6th Cir. 1999); *Preston v. Berendsen Fluid Power*, 125 F. Supp. 2d 245, 250 (W.D. Mich. 2000). "The context in which the comments are made is also critical. Discriminatory remarks made while implementing an adverse employment action are likely to reveal animus." *Erwin*, 79 F. App'x at 898.

As just suggested, in determining whether discriminatory acts (or comments made with animus) constitute direct evidence, courts often look for a "temporal proximity between the discriminatory act and the termination [or other adverse employment action]." *DiCarlo v. Potter*, 358 F.3d 408, 417 (6th Cir. 2004) (deeming comments made by the plaintiff's supervisor, suggesting animus against Italian-Americans like the plaintiff, to be direct evidence in part because they were made three weeks before the plaintiff's termination), *overruled on other grounds*, *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). And notably in this context, a remark is ambiguous if it is subject to be interpreted in a benign, non-discriminatory way. *See Zampierollo-Rheinfeldt v. Ingersoll-Rand de Puerto Rico, Inc.*, 999 F.3d 37, 55 (1st Cir. 2021).

Also pertinent to the instant matter before the Court, although the case law is not as express on this point as it might be, it cumulatively suggests that when the plaintiff claims that a series of comments (as opposed to one comment) constitutes direct evidence, the Court should (to the benefit of the plaintiff) consider all comments together, rather than separately whereby they would be more likely to be seen as "isolated." *See, e.g.*, *Robillard v. Opal Labs, Inc.*, 428 F. Supp. 3d 412, 438 (D. Or. 2019) ("Thus, viewing the alleged comments and statements identified by Plaintiff individually or collectively, they are not direct evidence of age-based discriminatory animus."); *Belgrove v. N. Slope Borough Power, Light, & Pub. Works*, 982 F. Supp. 2d 1040, 1048

(D. Alaska 2013) (noting that multiple comments, "taken together," did not amount to direct evidence of discrimination), *aff'd*, 632 F. App'x 412 (9th Cir. 2016). In this case, therefore, when confronted with multiple comments allegedly constituting direct evidence, the Court will consider them cumulatively, including for purposes of assessing whether the comments are "isolated."

In such a case, therefore, the Court does not ask whether each comment, viewed entirely by itself and in a vacuum, is isolated. Rather it asks something slightly different: whether the comments are all isolated even considering that multiple comments were made. The undersigned must note that this standard is rather subjective; depending largely on how they construe the word "isolated," different jurists may come to different conclusions as to whether the comments in a series of comments are properly considered "isolated." The undersigned as a jurist, like any other, must simply call this like he sees it. Crucially, however, even if there are multiple remarks, it is possible that they all may properly be considered isolated and, relatedly, insufficient to constitute direct evidence. *Cf. Shazor v. Pro. Transit Mgmt., Ltd.*, 744 F.3d 948, 956 (6th Cir. 2014) ("occasional [ ] sexist and racist comments . . . would not be enough to establish direct evidence of discriminatory intent."); *Burns v. Bd. of Cnty. Comm'rs of Jackson Cnty.*, 330 F.3d 1275, 1283 (10th Cir. 2003) (noting the lack of challenge to the district court's finding that a decisionmaker's alleged statement the plaintiff was a "no good Indian," together with another decisionmaker's two alleged remarks about Indians, did not constitute direct evidence of discrimination).

Having delved somewhat into the specifics as to what does (and does not) constitute direct evidence to support a claim of discrimination or retaliation, the Court now returns to a more general observation about direct evidence, one that seems frequently forgotten. This vital principle is that direct evidence is a very narrow concept. "Such evidence would take the form, for example, of an employer telling an employee, 'I fired you because you are disabled.'" *Smith v. Chrysler Corp.,*

155 F.3d 799, 805 (6th Cir. 1998). Perhaps a statement could constitute direct evidence if the employer is *slightly* less express about the fact that it is acting on discriminatory animus, but the statement needs to be rather express in this regard in order to constitute direct evidence; "[d]irect evidence of discrimination is the equivalent of an employer stating, 'I fired you because you are [in a protected class].'" *Anthony v. Unite Tele. Co. of Ohio*, 277 F. Supp. 2d 763, 773 (N.D. Ohio 2002) (citing *Smith*, 155 F.3d at 805). Just as the concept of direct evidence is narrow, its applicability will be rare because generally words will not come "from lips of the defendant proclaiming his or her . . . animus," *Robinson v. Runyon*, 149 F.3d 507, 512–14 (6th Cir. 1998), or (even more to the point) from an employer "announc[ing] that [it is] acting on prohibited grounds." *Erwin*, 79 F. App'x at 896–97.

## DISCUSSION[13]

Defendant moves for summary judgment, contending that Plaintiff has not presented sufficient evidence to support her claims of hostile work environment (Count 1) or retaliation (Count 2), under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII") and 42 U.S.C. § 1981 ("§ 1981"). Plaintiff relies on the same allegations to support both counts; that is to say, the same facts that Plaintiff alleges as the basis of her retaliation claim are also the basis of her hostile-work-environment claim.

---

[13] The facts that are stated herein without qualification are undisputed—a term the Court will use to describe both facts that are not in dispute *at all* and facts that are not in *genuine* dispute—and are treated as such. Alleged facts that are qualified here in some way (as for example by being prefaced with something like "Defendant asserts that" or "Plaintiff claims") are in dispute and are treated as such. Some of the facts contained herein come from record evidence (such as depositions) and are cited (as being accurate) by the opposing parties in their respective briefing. Other facts (background, uncontroversial ones) are mutually stated in the parties' opposing briefings.

There are other purported facts that are disputed but are evidentially supported and are asserted by Plaintiff and Defendant, respectively, to support their respective views that there is (according to Plaintiff) or is not (according to Defendant) a genuine issue of material fact as to a particular claim. The Court refers to these purported facts, and the evidence supporting them, in appropriate places in its analysis below.

Naturally, the ability of Plaintiff's claims to survive the Motion turns largely on what facts the Court should treat as not in genuine dispute (and thus are effectively established for purposes of the Motion); those facts are laid out in the following paragraphs.

Defendant, via its response (Doc. No. 25) to Plaintiff's Statement of Facts (Doc. No. 23-1), admits that various facts asserted by Plaintiff are undisputed for purposes of summary judgment.[14] Those facts, and Plaintiff's citations in support of them, are set forth below verbatim[15] (albeit with the addition of one ellipsis and with an enumeration different than the enumeration in Plaintiff's statement of facts):

1. Drivers . . . told Plaintiff and another woman driver, who is Mexican, that they only had a job because of affirmative action. (Salyer Decl. ¶ 19).

2. Drivers also made homophobic comments in Plaintiff's presence. Plaintiff would ignore them and did not like to communicate with them. (Salyer Decl. ¶ 18).

3. Supervisors did nothing to reprimand such homophobic language; they actually laughed in response or even participated in it themselves. On one occasion, current Supervisor Hunter Hobby laughed at a gay joke. (Salyer Decl. ¶ 17; Williams Decl. ¶ 5).

4. On another occasion, driver Shane Bassett said that he did not "understand gay people." Supervisor Aaron Hood responded with, "I don't either. I think they should take them out and shoot them all." (Williams Decl. ¶ 5).

5. This interaction between Shane Bassett and Aaron Hood occurred only two days before Aaron Hood suspended Plaintiff in July 2020. (Williams Decl. ¶ 5).

6. When Plaintiff and another woman driver, Sandra Boertmann, complained about having to use a universal bathroom, Supervisor John Tucker stated that the urinal seats were not a problem for him because his "dick is so big." (Plaintiff Dep. 96:4-7).

---

[14] That is not to say that Defendant admits the *materiality* of all of these facts; Defendant expressly disputes the materiality of several of them.

[15] The Court altered some of the citations to reflect the location of the documents within the docket of this case. Substantively, the quotation of the facts from Plaintiff's statement of facts (Doc. No. 23-1) is verbatim.

7.   Then, the following month, Plaintiff was bending down to tie her shoe when Supervisor John Tucker stated that he started to "smack her ass." (Plaintiff Dep. 188:25; Doc. No. 23-3, "Smith Decl." ¶ 5).

8.   In response to John Tucker's statement, Plaintiff got her keys and paper and left. She did not joke in response in any way. (Plaintiff Dep. 189:7-8; Smith Decl. ¶ 4, 7).

9.   Plaintiff told Human Resources Manager Rachel McKenzie that Michael Smith witnessed the entire incident. (Doc. No. 23-7, "Glenn Decl." ¶ 15).

10.  In September 2019, Plaintiff requested to speak with her supervisor at the time, Brent Bassham, to address the hostile environment. (Plaintiff Dep. 54:18; *see also* McKenzie Decl. 1, Ex. B).

11.  Plaintiff's conversation included her concerns with male co-workers referring to women as "bitches" and using the bathroom outside. (Glenn Decl. ¶ 2; McKenzie Decl. 1, Ex. B).

12.  When Brent Bassham's responses indicated to Plaintiff that he was not going to do anything about her concerns, she told him that she would take her concerns to Human Resources. (Glenn Decl. ¶ 3).

13.  When Goodwill became aware of Plaintiff's EEOC Charge, Human Resources Manager Rachel McKenzie called Plaintiff to discuss the John Tucker incident. (Glenn Decl. ¶ 13).

14.  During this phone call, Plaintiff told Rachel McKenzie what happened, that driver Michael Smith witnessed the entire incident, and that she did not hang out with John Tucker outside of work nor have a rapport with him that would make his comment welcome in any way. (Glenn Decl. ¶ 16).

15.  On July 22, 2020, Aaron Hood suspended Plaintiff for three (3) days without pay due to the incident with John Tucker and Plaintiff making accusations that were "not in good faith." (Glenn Decl., Ex. A, "Corrective Suspension Letter").

(Doc. No. 25).

In her response (Doc. No. 23-2) to Defendant's Statement of Facts, Plaintiff admits that

various facts asserted by Defendant are undisputed for purposes of summary judgment.[16] Those

---

[16] That is not to say that Plaintiff admits the *materiality* of any or all of these facts.

facts, and Defendant's citations in support of them, are set forth below verbatim (albeit with an enumeration different than the enumeration in Defendant's statement of facts):

1. On September 19, 2019, Angela Bryant-Ware, a Human Resources employee of Goodwill, who is African American, was assigned to investigate complaints from Plaintiff's co-workers, including allegations that Plaintiff cursed at them; called them names such as "white trash piece of shit," "lazy," and "whore"; and engaged in petty annoyances such as hiding keys to trucks and purposely blocking in trucks. (Complaint ¶ 21; McKenzie Decl. 1 ¶¶ 8, 10).[17]

2. On October 4, 2019 Ms. Bryant-Ware interviewed Plaintiff about these complaints. (Complaint ¶ 23; Plaintiff Dep. 125:17).

3. Plaintiff was not subject to any discipline as a result of Ms. Bryant-Ware's investigation. (Plaintiff Dep. 142:1-2).

4. Plaintiff skipped the training despite the fact that it was mandatory for all Transportation Department employees. (McKenzie Decl. 1 ¶ 14).

5. Plaintiff did not show up for work on December 4 and 5, 2020. (Complaint, ¶ 27; McKenzie Decl. ¶ 20).

6. On December 6, Plaintiff received a final written disciplinary warning from Goodwill due to her failure to attend the mandatory meeting and to complete her driving duties on November 26 and December 3. (Plaintiff Dep. 143:22-144:10; McKenzie Decl. 1 ¶ 21).

7. Plaintiff signed her EEOC Charge of Discrimination on March 17, 2020. (McKenzie Decl. 1, Ex. B).

8. Plaintiff's Charge of Discrimination alleged that Mr. Bassham assigned her "bad" trucks, that male co-workers used the word "bitches" and urinated outside, and that a co-worker, Mr. Tucker, told her that he "started to slap your ass." (McKenzie Decl. 1, Ex. B).

(Doc. No. 23-2).

## I.  Count 1: Hostile Work Environment

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating "against any individual with respect to his [or her] compensation, terms, conditions, or privileges

---

[17] Although Plaintiff does not dispute that Angela Bryant Ware investigated complaints made by Plaintiff's co-workers, she does dispute the validity of those complaints.

of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Based on *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644 (2020), the Court *concludes* that harassment based on her biological sex (female) and harassment based on her sexual orientation (gay) both constitute harassment based on "sex" for purposes of the third element stated above. *Id.* at 666 ("[I]t is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex.").[18]

A plaintiff may establish a violation of Title VII by proving that discrimination based on sex created a hostile or abusive work environment. *See Meritor Savings Bank v. Vinson*, 477 U.S. 57, 66 (1986); *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 825 (6th Cir. 1997). Discrimination in this form occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1998).

---

[18] Relatedly, the Court accepts Plaintiff's claim that she exhausted the sexual-orientation version of her "sex"-based harassment claim by checking the box for "sex discrimination" on her EEOC charge. (Doc. No. 23 at 15) (citing *Bostock*, 590 U.S. at 659) (holding that "sex" as defined in Title VII includes being gay or transgender). Persuasive authority to this Court recognizes that discrimination based on sexual orientation is a form of sex discrimination, as discrimination based on sexual orientation is considered both reasonably related to and growing out of a claim for sex discrimination. *Smith v. Kittle Prop. Grp., Inc.*, No. 3:23-CV-269 DRL-MGG, 2023 WL 6481021, at *4 (N.D. Ind. Oct. 4, 2023) (stating that "[p]recluding [plaintiff's] sexual orientation discrimination claim due to a procedural issue '[is] particularly inappropriate in a statutory scheme [like Title VII] in which laymen, unassisted by trained lawyers, initiate the process.'") (quoting *Love v. Pullman Co.*, 404 U.S. 522, 527 (1972)). Preventing Plaintiff from proceeding with her claim, considering the significant leeway given to the scope of EEOC charges for exhaustion purposes, would frustrate the remedial purposes of Title VII rather than foster the preferable resolution of the suit on its merits.

Finding this reasoning persuasive, and the fact that Defendant's argument (in its Reply) opposing such acceptance relies almost completely on a totally inapplicable case—*Russ v. Memphis Light Gas & Water*, 720 F. Appx. 229, 238 (6th Cir. 2017)—while actually foregoing better (not to say winning) arguments, the Court rejects Defendant's claim that Plaintiff failed to exhaust a claim of sexual-orientation-based harassment.

To be actionable under Title VII, the conduct must be both objectively offensive and subjectively offensive. That is, to constitute a Title VII violation, the "[harassing] conduct must be severe or pervasive enough to create an objectively hostile or abusive work environment"—an environment that a reasonable person would find hostile or abusive—and an environment that the plaintiff "subjectively perceive[s] . . . to be abusive." *Harris*, 510 U.S. at 21–22.

Notably, consistent with generally prevailing judicial practices, the Court for the most part herein refers to the conduct that creates a hostile work environment as "harassment"; that is, a hostile work environment is created by "harassment."[19]

To be actionable under Title VII, the harassing conduct creating the hostile work environment must be extreme. *See, e.g., Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). The Supreme Court has noted that Title VII is not a workplace civility code. *See id*. Sporadic use of abusive language, jokes insulting members of a protected class, or occasionally teasing do not meet the high bar for actionable harassment. *Id.* On the other hand, "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris*, 510 U.S. at 21 (internal quotation marks and citations omitted). But as just suggested, slurs, ridicule, etc. are not pervasive unless they *permeate* the workplace. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998).

"A court determines whether a hostile work environment has been created 'by looking at all the circumstances . . . includ[ing] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

---

[19] This means, among other things, that a claim of, for example, "sexual harassment" is the same thing as a claim of hostile work environment based on sexual harassment, and a claim of "race-based harassment" is the same thing as a claim of hostile work environment based on race-based harassment.

unreasonably interferes with an employee's work performance." *Bradley v. Arwood*, 705 F. App'x 411, 422 (6th Cir. 2017) (quoting *Harris*, 510 U.S. at 23). "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *CSX Transp.*, 643 F.3d at 512 (quoting *Faragher*, 524 U.S. at 788). "Thus, occasional offensive utterances [unless extremely serious (severe)] do not rise to the level required to create a hostile work environment because, '[t]o hold otherwise would risk changing Title VII into a code of workplace civility.'" *Phillips v. UAW Int'l*, 854 F.3d 323, 327 (6th Cir. 2017) (quoting *Grace v. USCAR*, 521 F.3d 655, 679 (6th Cir. 2008)).

As just suggested, "[c]onduct need not be *both* severe and pervasive to constitute a hostile environment, but may be *either* sufficiently severe or sufficiently pervasive." *Stanley v. Nw. Ohio Psychiatric Hosp.*, 7 F. Supp. 3d 731, 743 (N.D. Ohio 2014) (emphasis added) (*citing Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 717 n. 2 (6th Cir. 2012)).[20]

The Sixth Circuit has stated:

> Like [other kinds of] discriminatory actions, hostile-work-environment claims *based on indirect evidence* are analyzed under a version of the *McDonnell Douglas* framework. To make out a *prima facie* case, a plaintiff must show: "(1) she was a member of a protected class; (2) she was subjected to unwelcomed harassment; (3) the harassment was based on sex or race; (4) the harassment created a hostile work environment; and (5) employer liability."

*Kubik v. Cent. Michigan Univ. Bd. of Trustees*, 717 F. App'x 577, 584 (6th Cir. 2017) (quoting *Ladd v. Grand Trunk W. R.R.*, 552 F.3d 495, 500 (6th Cir. 2009) (emphasis added). As it expressly indicated, the Sixth Circuit in *Kubik* treated these five elements as elements specifically of an indirect-evidence *prima facie* case under *McDonell Douglas* (as the Sixth Circuit has done also in

---

[20] This means that even if comments fail to qualify as "pervasive" because they are sporadic or isolated, they can create a hostile work environment if (albeit *only* if) they are "extraordinarily severe." *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000).

other cases). For reasons set forth below, the Court herein treats these five things as elements, but not as elements of an indirect-evidence *prima facie* case under *McDonell Douglas*. Both of these observations are important; it is important that these are the elements governing Count 1, but it is also important that at least for present purposes, they are elements of something other than an indirect-evidence *prima facie* case under *McDonell Douglas*.

Notably, although courts do not always identify the particular element of an indirect-evidence *prima facie* case to which the requirement of severe or offensive conduct relates, the Sixth Circuit (and other courts) have made clear that such requirement is indeed an element an indirect-evidence prima facie case. *E.g.*, *Bruce v. Meharry Med. Coll.*, 692 F. App'x 275, 279 (6th Cir. 2017) (treating this as an element of an indirect-evidence *prima facie* case under *McDonell Douglas*). In the Court's view, the requirement relates to the fourth element—which is to say that even if the second and third elements are satisfied because the plaintiff was subjected to unwelcomed harassment based on sex or race, the harassment must be severe or pervasive in order to satisfy the fourth element (that the harassment created a hostile work environment).

Significantly, some of the Supreme Court cases cited above serve to invalidate a portion of prior caselaw in this circuit and require that the court recast the analytical framework for a hostile-work-environment claim based on a supervisor's actions (i.e., the fifth element). Previously, to establish such a claim, a plaintiff had to show not only that (1) she was a member of a protected class; (2) she was subject to unwelcomed sexual [or other kind of] harassment; (3) the harassment was based on her sex; and (4) the harassment created a hostile work environment; but also that (5) the supervisor's harassing actions were foreseeable or fell within his or her scope of employment, and the employer failed to respond adequately and effectively. *See Kauffman v. Allied Signal, Inc.*, 970 F.2d 178, 183–184 (6th Cir. 1992).

After *Faragher* and *Burlington Industries*, however, it is no longer enough for an employer to take corrective action after otherwise actionable harassment occurs. Instead to avoid liability, employers now have an affirmative duty to prevent harassment by supervisors. Once an employee has established an actionable hostile work environment created by a supervisor, an employer can escape liability under the hostile-work-environment theory only by showing "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher,* 524 U.S. at 807.

*Faragher* happened to involve (and frame its rule in terms of) hostile-work-environment claims premised on sexual harassment in particular. But the Supreme Court has since noted that several federal courts of appeals—including the Sixth Circuit in *Allen v. Michigan Dep't of Corr.,* 165 F.3d 405, 411 (6th Cir. 1999) (holding that *Faragher*'s affirmative defense is permitted in response to claim of racial harassment)—have held that *Faragher* applies to other types of hostile-work-environment claims, including race-based claims, and the Supreme Court has assumed *arguendo* that this is correct. *See Vance v. Ball State Univ.*, 570 U.S. 421, 430 (2013). This Court, following *Allen*, likewise treats this view as correct.

The Supreme Court has not ruled on the appropriate requirements for a hostile-work-environment claim stemming from the actions of a co-worker (as distinguished from a supervisor). The Sixth Circuit has noted that liability for co-workers' harassment does exist and is direct liability,[21] unlike liability for supervisors' harassment, which is indirect liability. *Hafford v.*

---

[21] It is direct liability because it is liability based on the employer's *own* negligence, not derivative liability under *respondeat superior* based on the co-worker's actions (which is the kind of liability the employer bears based on a supervisor's actions). *See Fleenor v. Hewitt Soap Co.,* 81 F.3d 48, 50 (6th Cir. 1996).

*Seidner*, 183 F.3d 506, 513 (6th Cir. 1999). For claims based on co-workers' harassment, the Sixth Circuit uses the above-referenced four elements from the requirements governing harassment by a supervisor, plus a fifth element[22]: the plaintiff must show that the employer "knew or should have known of the charged [ ] harassment and failed to implement prompt and appropriate corrective action." *Id.* (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 804 n. 11 (6th Cir. 1994), *abrogated on other grounds by Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 148 (2000)). *See also Blankenship v. Parke Care Centers, Inc.*, 123 F.3d 868, 872 (6th Cir. 1997), *abrogated on other grounds by Faragher*); *Fleenor v. Hewitt Soap Co.*, 81 F.3d 48, 50 (6th Cir. 1996) (the standard "is one of failure-to-correct-after-notice or duty to act after knowledge of harm"). Although *Hafford* and many other cases speak in terms of sexual harassment only, it appears that this standard applies to other kinds of actionable harassment as well. Indeed, *Hafford* itself indicates as much, plainly suggesting that it applies to race-based or religion-based harassment. *See Hafford*, 183 F.3d at 512-13.

In their respective briefing, neither Plaintiff nor Defendant refer to the *McDonnell Douglas* framework in connection with either of Plaintiff's claims. That is, they neither mention *McDonnell Douglas* nor describe its substance (i.e., the three stages of burden shifting). The closest Defendant gets is when it refers to a "*prima facie* case*"* of hostile work environment (Doc. Nos. 19 at 5, 6; 24 at 2) and of retaliation (Doc No. 19 at 15, 16), and the closest Plaintiff gets is when she lists the elements of what she calls a "prima facie hostile work environment claim." (Doc. No. 23 at 7). But a reference to a "*prima facie*" case is not necessarily a reference to stage one of the *McDonnell Douglas* framework, because a "*prima facie*" case is a concept that can have application under a

---

[22] Mirroring the erstwhile fifth element provided in *Kauffman v. Allied Signal, Inc.*, 970 F.2d 178, 183–184 (6th Cir. 1992) (that the *supervisor's* harassing actions were foreseeable or fell within his or her scope of employment, and the employer failed to respond adequately and effectively), which—as a reminder—is no longer recognized as an element.

direct-evidence theory as well as an indirect-evidence theory under *McDonnell Douglas*.[23] *See Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 911 (6th Cir. 2009).

In any event, although the parties talk about the elements of a *prima facie* case, regrettably neither one addresses what they mean by *"prima facie"* in this context—i.e., explains the difference between establishing the elements of *a claim as a whole* and establishing the elements of a mere *prima facie* case with respect to that claim. The difference is material; it means one thing if a party establishes all the elements of a *claim,* and it means something far less to establish all the elements of a mere *prima facie* case; this is especially true when the *prima facie* case established is an indirect-evidence *prima facie* case under *McDonnell Douglas*, in which case the plaintiff establishing the case still could lose the claim at stage three of *McDonnell Douglas*.

Ultimately, despite their use of the phrase "*prima facie*" when describing the elements of Count 1 (or Count 2), the parties do not assert that these are merely the elements of an indirect-evidence *prima facie* case under *McDonnell Douglas*. Instead, they treat the elements as if they are the elements of the claim as a whole. This approach is appropriate for Count 1 because the better view is that *McDonnell Douglas* simply does not apply to claims of hostile work environment.[24] Concededly, many cases in the Sixth Circuit do apply *McDonnell Douglas* to such

---

[23] Usually, in the employment discrimination context, a reference to a "*prima facie* case" is a reference to an indirect-evidence *prima facie* case. But the term appropriately can be used to refer also to a direct-evidence *prima facie* case. "In other words, the notion of a '*prima facie* case' applies in the direct-evidence context as well as in indirect-evidence context, where the actual term itself is used more frequently. The upshot of establishing a *prima facie* case in either context is that it shifts the burden to the defendant, but the burden thus shifted is different in the direct-evidence context than in the indirect-evidence context." *Grizzard v. Nashville Hosp. Cap., LLC*, No. 3:18-CV-00034, 2021 WL 3269955, at *19 (M.D. Tenn. July 30, 2021).

[24] As the Court discusses below, *McDonnell Douglas* does apply to Count 2, because a claim of retaliation can be established by an indirect-evidence *prima facie* case under *McDonnell Douglas.* As a result, it is appropriate to treat the elements described for a claim of retaliation (such as Count 2) as claims of an indirect-evidence *prima facie* case of retaliation.

claims and treat the elements of such a claim as elements of a mere *prima facie* case. *E.g.*, *Kubik*, 717 F. App'x at 584 (quoting *Ladd v. Grand Trunk W. R.R.*, 552 F.3d 495, 500 (6th Cir. 2009)).

But the Sixth Circuit has expressly held that *McDonnell Douglas* does *not* apply to claims of hostile work environment. *Pollard v. E.I. DuPont de Nemours Co.*, 213 F.3d 933, 943 (6th Cir. 2000) ("The *McDonnell Douglas* framework is meant to prove that conduct which might have some otherwise legitimate motive (such as promoting a man instead of a woman) was in fact based upon discriminatory motive. When a plaintiff proves that a hostile work environment existed, there is no legitimate justification for such an environment, and thus recourse to the *McDonnell Douglas* test is not warranted."), *rev'd on other grounds*, 532 U.S. 843 (2001). This holding appears never to have been overruled and is still cited by courts around the country. Because *Pollard* was reversed (on other grounds), the Court does not treat it as precedential. However, its holding was unimpeached by that reversal and is very persuasive—which is why *Pollard* still gets cited for this holding and why several circuits (and district courts) have taken the same approach. *See e.g., Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 n. 11 (3d Cir. 2017) ("We agree that the burden-shifting framework is inapplicable here because, as the *Pollard* court explained, there can be no legitimate justification for a hostile work environment. Therefore, we will not apply the *McDonnell Douglas* burden-shifting framework to [plaintiff's] hostile work environment claim." (citation omitted)); *Piety Foley v. Drexel Univ.*, No. CV 22-1777, 2024 WL 3540445, at *3 n.5 (E.D. Pa. July 25, 2024); *Lewis v. Board of Supervisors of Louisiana State University*, No. CV 21-198-SM-RLB, 2023 WL 8370096, at *8 n. 102 (M.D. La. Dec. 1, 2023).[25]

---

[25] The Fourth Circuit cogently described the sound rationale for this rule as follows:

> The district court erred when it applied the burden-shifting framework to Stewart's hostile work environment claim. The purpose of the burden-shifting framework is to assist the court in determining whether a plaintiff without direct evidence of unlawful intent can

It may also be why the Sixth Circuit in some cases has made no mention at all of *McDonnell Douglas* when analyzing claims of hostile work environment and has treated the (five) stated elements as elements of the claim as whole—the finding of which by the jury would enable the jury to find in favor of the plaintiff on the claim—and not merely elements of an indirect-evidence *prima facie* case of hostile work environment. *See Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 411 (6th Cir. 2021)*; Waldo v. Consumers Energy Co.*, 729 F.3d 802, 819 (2013); *Williams v. CSX Transp. Co.,* 643 F.3d 502, 511 (2011).[26] The Court will do likewise here,[27] especially given that

---

nevertheless raise a triable issue over whether a facially legitimate action was the product of discriminatory motivation. *See* [*Burdine*, 450 U.S. at 253–54]. Here, Stewart has presented direct evidence of sexual harassment, and within the context of her hostile work environment claim there is no facially legitimate action to consider. *See Johnson v. Booker T. Washington Broad. Serv. Inc.*, 234 F.3d 501, 510–11 (11th Cir. 2000) (holding that district court erred by applying burden-shifting framework to sexual harassment case).

       The district court therefore applied an improper standard to Stewart's hostile work environment claim.

*Stewart v. MTR Gaming Grp., Inc.*, 581 F. App'x 245, 247–48 (4th Cir. 2014). *Sewart* hints at something else that is wrong with reflexively (and incorrectly) applying *McDonnell Douglas* to claims of hostile work environment. *McDonnell Douglas* is supposed to *aid* plaintiffs by giving them an *alternative* way to prevail—i.e., by giving them a way to survive a summary-judgment motion even when they lack direct evidence. It is *not* supposed to force a plaintiff to prevail (if at all) under an indirect-evidence theory. *Stewart* seems to point to the risk that courts might incorrectly take the view that a plaintiff *does* have to prevail (if at all) only under an indirect-evidence theory. How might courts do this? By overlooking the fact that: (a) a plaintiff always has the option of preceding via direct evidence (if any exists); and (b) explicitly race-based or sex-based comments can (at least if severe or pervasive) constitute direct evidence of unlawful race-based or sex-based harassment.

[26] The Court is aware that the earlier cases (*Waldo* and *Williams*) describe the fifth element somewhat differently than does *Wyatt*. The Court follows *Wyatt* and other later cases, which were informed by Supreme Court case law post-dating *Waldo* and *Williams*.

[27] The outcome of Count 1 very likely would be the same even if the Court were to treat *McDonnell Douglas* as having (at least potential) applicability to a claim of hostile work environment. For one thing, if (as the Court finds herein) Defendant fails to show the absence of a genuine issue of material fact as to the five elements when treated as elements of *the claim as a whole* of hostile work environment, Defendant very likely would fails to show the absence of a genuine issue of material fact as to the five elements when treated as elements of merely a *prima facie* case of hostile work environment. And that failure (at stage one of *McDonnell* Douglas) would mean that Defendant would fail to prevail under an analysis involving

neither party's analysis suggests otherwise despite their respective perfunctory incantations of the words "*prima facie*."[28] That is, the Court will treat the five elements as elements of a claim rather than of just an indirect-evidence *prima facie* case.[29]

Defendant challenges Plaintiff's ability to establish the third element (harassment based on protected category), the fourth element (conduct created a hostile work environment), and the fifth element (employer liability). (Doc. No. 19 at 5). In its Memorandum, Defendant (boldly) contends that "the undisputed facts show Plaintiff was never subjected to a hostile work environment on any basis." (Doc. No. 19 at 1). Defendant further argues that "Plaintiff cannot show or produce any direct evidence of racial discrimination or sex discrimination."[30] (*Id*. at 7). To support this,

---

*McDonnell Douglas*, because Defendant (having not mentioned *McDonnell Douglas* at all) does not make any argument for prevailing at the later stages of *McDonnell Douglas*.

For another thing, even if a plaintiff potentially could choose to proceed under an indirect-evidence theory under *McDonnell Douglas*, the plaintiff still would retain the option of proceeding with direct evidence. The Court simply does not see how comments (like the ones in the present case) that are explicitly race-based or sex-based do not constitute direct evidence of a race-based or sex-based hostile work environment, at least if they are sufficient severe or pervasive (which is something a jury could find in this case, as the Court notes herein). That is, although the Court acknowledges Sixth Circuit case law apparently holding that even race-based or sex-based comments do not amount to direct evidence of race-based or sex-based harassment unless they are severe or pervasive, there can be no question that they directly suggest race-based or sex-based harassment if they *are* severe *or* pervasive—something that a reasonable jury could find to be true in Plaintiff's case.

[28] In fairness to the parties, they are not the only ones to use the term "*prima facie*" in this context without explaining what significance of that qualifying term is in the context in question and without tying it in any way to the *McDonnell Douglas* framework; for example, the Sixth Circuit has done it. *See* Wyatt*, 999 F.3d at 411.*

[29] One caveat, though: although cases taking this approach typically refer to the fifth element (employer liability) as indeed just that—an element, i.e., something that the plaintiff must prove—in some cases (those involving *supervisor* harassment) the burden actually is on the employer to disprove it (i.e., show, as an affirmative defense, that employer liability is not warranted under the applicable standard). *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). But that scenario is not implicated herein.

[30] To the extent that Defendant here is implying that evidence that harassment was based on a protected category (the third element of a hostile-work-environment claim), must be *direct* evidence in order to support Plaintiff's claim, the Court disagrees. As the Third Circuit has explained:

Defendant looks to the Complaint, listing the following incidents alleged therein: (1) employees using the word "bitches"; (2) male co-workers urinating outside and in the presence of female co-workers; Mr. Bassham's assignment of "bad" trucks to Plaintiff; (3) Mr. Tucker telling Sandra Boertmann that his "dick touched the water" in reference to the (purportedly large) size of his genitals; (4) John Tucker allegedly saying in January of 2020, "I started to smack your ass" to Plaintiff while she was bent over; (5) Goodwill's investigation into the complaints made against Plaintiff; (6) Goodwill's alleged failure to discipline Roger Sutton for failing to latch the hood of a truck eventually assigned to Plaintiff; and (7) Aaron Hood's suspension of Plaintiff in July of 2020 in response to her interaction with John Tucker in January, 2020. Defendant argues that these incidents—which, again, are incidents alleged *in the Complaint*—"do not satisfy the required

---

We have cautioned that a hostile work environment claim need not be supported by direct evidence of explicit racial harassment. Circumstantial evidence may do. *See Raniola v. Bratton,* 243 F.3d 610, 621–22 (2d Cir.2001) (explaining that a hostile work environment plaintiff may prevail by adducing "circumstantial proof that ... adverse treatment that was not explicitly sex-based was, nevertheless, suffered on account of sex"). Nor was Rivera required to demonstrate that his national origin was the *only* motivating factor. He needed to show only that "a reasonable fact-finder could conclude that race [or national origin] was *a* motivating factor in the harassment." *See Terry v. Ashcroft,* 336 F.3d 128, 150 (2d Cir.2003) (emphasis added).

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 23 (2d Cir. 2014). Illustrating how these principles can work in practical application, the court went on to explain (referring to the co-plaintiffs, Rivera and Talton):

Here, there was (barely) enough evidence—both the use of ethnic slurs and the broader bullying and physical harassment—from which a reasonable jury could find that [an employee who had had an affair with Rivera's wife] harassed Rivera not merely because of their personal history, but also because Rivera was Puerto Rican. *Raniola,* 243 F.3d at 622. Considering that evidence, together with the evidence of a racially hostile work environment for Talton, his co-worker, in the light most favorable to Rivera, and resolving all ambiguities in his favor, we conclude that the District Court erred in granting summary judgment to the [defendant] on Rivera's hostile work environment claim.

*Id.*

severity or pervasiveness to establish a hostile work environment under Title VII." (Doc. No. 19 at 8).

This approach is unavailing. The instant motion is a motion for summary judgment, whereon (as noted above) the movant has the burden of showing the absence of a genuine issue of material fact. For a defendant (like Defendant here) seeking summary judgment on the grounds that the plaintiff lacks evidence sufficient to raise a jury issue as to one or more elements of a claim, the defendant (in almost all cases) needs to do this by identifying portions of the record that demonstrate the insufficiency of the evidence. It is not enough to point to the allegations in the complaint and assert that even if they are true, they are insufficient to establish all elements of the claim; that may be enough to prevail on a motion to dismiss, but not a motion for summary judgment, at which stage it is *not* presumed that the plaintiff cannot prove any facts beyond those set forth in the complaint; indeed, there is no reason to presume this, because plaintiff may have learned of various additional facts (and evidence to prove those facts) via discovery. So if a plaintiff for whatever reason has managed to avoid dismissal of the complaint under Rule 12(b)(6), the plaintiff cannot suffer summary judgment based on the insufficiency of the allegations of the complaint.

Moreover, even if Defendant had shown (which it did not) that Plaintiff could not marshal evidence of anything beyond what is alleged in the Complaint, Defendant's approach would still miss the mark. In the Court's view, Defendant perhaps has a colorable argument that the facts alleged in the Complaint fail to satisfy one or more of the three challenged elements, such that a jury *should* not find all of those elements by a preponderance of the evidence. But the Court simply cannot find that Defendant has adequately supported the view that if Plaintiff could prove only those facts that are set forth in the Complaint, Plaintiff should not even reach the jury on these

elements, *i.e., the jury could* not find all of those elements by a preponderance of the evidence. This is especially true since there need only be "(barely) enough evidence—from which a reasonable jury could find" in favor of the plaintiff. *Rivera*, 743 F.3d at 23. What Defendant does in its Motion is argue the upshot of the facts (those alleged in the Complaint, that is) in a manner more appropriate for prevailing at trial than for prevailing on a motion for summary judgment.

The Court thus will deny Defendant's Motion as to Count 1 on the basis that Defendant failed to meet its initial burden (to show the absence of evidence to support one or more elements of Count 1) as the summary-judgment movant. Alternatively, even assuming *arguendo* that Defendant had met its burden, such that the burden would then shift to Plaintiff to rebut Defendant's showing by presenting evidence sufficient to support a jury finding the existence of all challenged elements, Plaintiff meets that burden.

As the third element of a hostile-work-environment claim, the Court finds direct evidence of harassment (meaning the existence of unlawful discrimination is "patent")[31] reflected by facts that are undisputed between the parties. It is undisputed that: (1) drivers made *homophobic* comments in Plaintiff's presence (Doc. No. 25 at ¶ 5); (2) drivers told Plaintiff that she only had the job because of *affirmative action* (*Id*. at ¶ 4); (3) driver of Defendant said that he did not "understand gay people," whereupon Supervisor Aaron Hood responded, "I don't either. I think they should take them out and shoot them all," (*Id*. at ¶ 7); (4) when Plaintiff and another woman driver complained about having to use a universal bathroom, Mr. Tucker stated in front of Plaintiff and the other woman that the urinal seats were not a problem for him because his "dick is so big" (*Id*. at ¶10); (5) Plaintiff bent down to tie her shoe, whereupon Mr. Tucker stated that he started to "smack her ass" in January 2020 (*Id*. at ¶ 11); and (6) (as is non-hearsay and relevant as to the

---

[31] As noted above in a footnote, such evidence can be circumstantial rather than direct, but here there is direct evidence that the harassment was race-based and sex-based.

element of employer liability in particular) Plaintiff mentioned to Supervisor Bassham her concerns with male co-workers referring to women as "bitches" and using the bathroom outside (*Id.* at ¶ 17). Moreover, Plaintiff has presented via her Response evidence of the following events in support of sex/race-based harassment:

- Plaintiff experienced racist remarks as a part of "common, everyday conversation," including usage of the word: n****r. (Salyer Decl. ¶ 19; Williams Decl. ¶ 4).
- Racist, sexist, and homophonic remarks were common and not disciplined. Supervisors hear this language and do not reprimand it. (Williams Decl. ¶¶ 4, 14).
- While working for Defendant, a former co-worker of Plaintiff regularly experienced sexually oriented remarks, homophobic language, and discrimination against women, until she eventually quit. (Crumpton Decl. ¶ 3). She reported the regular sexual harassment by her supervisor to HR Representative Rachel McKenzie, Ben Lyle, and Supervisor Aaron Hood, but the supervisor was not disciplined or in any way reprimanded for his behavior. (*Id.* at ¶ 4).

True, the occurrence of these events is not undisputed. But Plaintiff has presented evidence that they occurred. The existence of this evidence directly counters the notion that Plaintiff lacks evidence to show a genuine issue of material fact as to sex/race-based harassment, as these statements and actions are direct evidence of harassment based on race or sex and would be material for a jury's consideration as to element three of Plaintiff's case. Notably, in its Reply, Defendant does not even attempt to address either the direct evidence of harassment presented via Plaintiff's Response or Plaintiff's responses to Defendant's Statement of Facts.

Instead, Defendant argues that Plaintiff has failed to meet her burden because "there is no evidence of any physical touching, no evidence of inference with Plaintiff's ability to do her job, and only one incident of inappropriate sexual language *directed at Plaintiff*." (Doc. No. 24 at 2) (emphasis in original). This is incorrect; of the six *undisputed* incidents set forth above, *only one* was not directed at Plaintiff. And just because a comment or remark was not directed at Plaintiff

does not mean that it cannot be considered along with the many other undisputed incidents where sex-based or race-based remarks were directed at her.

Turning to the fourth element (the harassment creating a hostile work environment), as indicated above this element has both a subjective component and an objective component. Subjectively, a jury could find that Plaintiff found the above comments to be offensive. (Doc. No. 23 at 10-11) (citing Plaintiff's deposition testimony that she is experiencing anxiety every day that she comes to work and has changed her work schedule to avoid working with Mr. Tucker). But to assess objectively whether a reasonable person would find these comments offensive, the Court must consider "'all of the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance.'" *Thornton v. Fed. Express Corp.*, 530 F.3d 451, 455 (6th Cir. 2008). Considering the evidence of all the circumstances surrounding the comments, and in a light most favorable to Plaintiff, the Court finds that the record establishes a genuine factual issue concerning the fourth element. Although there is little to no evidence of physical intimidation, there were continuous remarks that were either sexual in nature or disrespectful towards Plaintiff's race or sexual orientation, and some were directed targeted at Plaintiff in particular. A reasonable jury could conclude that a reasonable person in Plaintiff's position could find the comments degrading and offensive. Also, Defendant failed to cabin the time period in which the comments were made, despite being on notice that the Complaint suggests that they occurred over a period of nearly an entire year. A reasonable jury, upon hearing the nature of comments—and the frequency of those comments over the course of less than a year—could conclude that they created an environment that was objectively abusive or hostile; especially considering the context in which these comments were made does not indicate they were intended

to be teasing or comical, but rather were meant to be degrading and offensive, and often directed at Plaintiff.

"Whether conduct is severe or pervasive is 'quintessentially a question of fact.'" *Jordan v. City of Cleveland*, 464 F.3d 584, 597 (6th Cir. 2006) (*O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999)). The fact intensive nature makes "the severity and pervasiveness evaluation . . . particularly unsuited for summary judgment." *O'Shea*, 185 F.3d at 1098. And it is unsuited for summary judgment here.

In relation to the fifth element, the Court notes that Plaintiff seeks to hold her employer liable for harassing conduct by co-workers and one supervisor; though it is disputed whether the supervisor, John Tucker, is in fact a supervisor. Accordingly, the Court must determine whether John Tucker will be treated as a supervisor for purposes of the Motion.

In response to Plaintiff's Statement of Undisputed Facts, Defendant relies on the Declaration of Benjamin Lyle, to support the following: (1) Mr. Tucker is a dispatcher in the Transportation Department; (2) Mr. Tucker does not manage the Transportation Department or have a supervisory role; and (3) Plaintiff does not either report to Mr. Tucker, and Mr. Tucker is not in a supervisory role over Plaintiff. (Doc. No. 26 at ¶¶ 9-11). Plaintiff challenges this via her Response, using the Declaration of Michael Smith to support the notion Mr. Tucker actually is her supervisor (and that she did not respond to Mr. Tucker's offensive remarks). (Doc. No. 23 at 12). Unfortunately for Plaintiff, Mr. Smith's Declaration does not state or even imply that Mr. Tucker was Plaintiff's supervisor. *Id*. As Plaintiff's record citation does not refute Defendant's contention, the Court finds, for purposes of considering employer liability in the context of the Motion, that

Mr. Tucker was not Plaintiff's supervisor.[32] Thus, the Court need only consider the employer's liability for harassment by a co-worker.

Where an employee alleges race/sex harassment by a non-supervisory co-worker, including in the context of a hostile-work-environment claim, an employer's liability depends on the plaintiff showing that the employer knew or should have known about the harassment but failed to implement prompt and appropriate corrective action. *Faragher*, 524 U.S. at 789. For Plaintiff to succeed on this element, a jury would have to find both that Defendant knew or should have known about the harassment *and* failed to implement prompt and appropriate corrective action. To prevail based on this element, Defendant, as the summary-judgment movant, must show preliminarily that Plaintiff has insufficient evidence of one prong, insufficient evidence of the other prong, or insufficient evidence of both prongs. And Defendant simply fails to meet that burden.

Relying primarily on the Declaration of HR Representative McKenzie, Defendant argues that the evidence shows that once Defendant became aware of Plaintiff's complaints via her EEOC charge, it responded promptly and reasonably to her complaints (by starting an investigation and subsequently suspending Mr. Tucker). (Doc. No. 19 at 12-13). Although a jury could consider this as probative evidence cutting against finding the fifth element satisfied, a jury is not limited to this consideration. A reasonable jurist could also consider evidence that Plaintiff made reports to her supervisors about the hostile environment, (Doc. Nos. 1 at ¶16; 23 at 3), and reported to a HR representative of Defendant the same complaints she made to Supervisor Bassham, who had failed to take those complaints to HR himself. (Doc. No. 1 at ¶ 23). A reasonable jurist could also consider

---

[32] To be clear, the Court is not saying there is nothing in the record that could support the notion that Mr. Tucker was Plaintiff's supervisor. But the Court makes its finding here because Plaintiff fails to cite to anything in the record that supports Mr. Tucker being her supervisor at the time of the alleged harassment. And it is not the Court's role to look for such support; "[j]udges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

the *undisputed* fact that "[s]upervisors did nothing to reprimand [ ] homophobic language; they actually laughed in response or even participated in it themselves. On one occasion, current Supervisor Hunter Hobby laughed at a gay joke." (Doc. No. 25 at ¶ 6).

For all of these reasons, the record contradicts any notion that there is an absence of evidence to prevent Plaintiff from reaching a jury on the fifth element.[33]

Therefore, viewing the light most favorably to the Plaintiff, the Court finds (1) that Defendant has not met its burden of showing an absence of evidence on elements three, four, or five of Plaintiff's claim of hostile work environment, and alternatively, (2) even if Defendant had met its burden, that Plaintiff has pointed to evidence that would show a genuine dispute of material facts related to these elements.

For the reasons stated above, the Court will **deny** the Motion as to Plaintiff's claim of a hostile work environment.

## II. Count 1: Retaliation

In addition to the protections that it provides against employment discrimination (including hostile work environments) based on protected characteristics, Title VII also shields workers from retaliation for reporting workplace discrimination or submitting an EEOC complaint. A plaintiff "'may prove [subject to the defendant's rebuttal as to why it took the adverse employment action(s)] unlawful retaliation by presenting direct evidence of such retaliation or by establishing a *prima facie* case under the *McDonnell* Douglas framework.'" *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013) (quoting *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003)). *See*

---

[33] Defendant certainly does not make such a showing in its Reply, wherein it continues—as it did in the Memorandum—to outline arguments following along the wrong standard. (*See* Doc. No. 24 at 2-3). The Court is confused why Defendant would spend time explaining "tangible action" (the standard for a supervisor's harassing conduct) when in the same section Defendant asserts that "John Tucker is not Plaintiff's supervisor and he is not authorized to take any tangible employment action against Plaintiff." (*Id*. at 3).

*also Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (supporting the notion that if there is no direct evidence of retaliation, then a retaliation claim is subject to the *McDonnell Douglas* framework).

Plaintiff has not identified any direct evidence of retaliation, i.e., retaliatory intent. But she can establish an indirect-evidence *prima facie* case of retaliation by establishing that: "(1) [ ] she engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against [Plaintiff], and (4) there was a causal connection between the protected activity and the adverse employment action." *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008) (citing *Morris v. Oldham County Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000)). Protected activity includes opposing any practice made unlawful by Title VII, or making a charge or testifying, assisting or participating in any manner in an investigation, proceeding, or hearing under Title VII. 28 U.S.C. § 2000e-3(a). Reporting or complaining to management of discriminatory conduct also constitutes protected conduct. *Pendleton v. Bob Frensley Chrysler Jeep Dodge Ram, Inc.*, No. 3:14 C 02325, 2016 WL 2927983, at *8 (M.D. Tenn. May 19, 2016) (collecting cases).

To show that an employer's challenged action amounts to an "adverse employment action," a plaintiff must show that the "employer's challenged action would have been material to a reasonable employee," which means that it likely would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 60 (2006) (adopting the formulation set forth by the Seventh Circuit and the District of Columbia Circuit). A significant distinction was described by the District of the District of Columbia:

> [T]here is a difference between "adverse actions" that support a claim for discrimination and "materially adverse actions" that support a claim for retaliation.

Unlike discriminatory actions, retaliatory actions need not be employment-related or even occur in the workplace, nor must they result in "a materially adverse change in the terms or conditions of one's employment." Nonetheless, the alleged retaliatory action must produce "an injury or harm." The injury or harm must be "material," meaning that it could "dissuade a reasonable worker from making or supporting a charge of discrimination."

*Doe 1 v. George Washington Univ.*, 369 F. Supp. 3d 49, 73 (D.D.C. 2019) (quoting *Nurriddin v. Bolden*, 40 F. Supp. 3d 104, 116 (D.D.C. 2014)) (internal alterations and citations omitted); *see also White*, 548 U.S. at 57.

And to be clear, the standard for showing an adverse employment action for a retaliation claim is *lower* than that for a discrimination claim. The Sixth Circuit has noted that "the burden of establishing a prima facie case of retaliation is not onerous[.]" *Hatchett v. Health Care & Ret. Corp. of Am.*, 186 F. App'x 543, 550 (6th Cir. 2006) (internal quotation marks and citation omitted). Contributing to such lack of onerousness is the relatively broad notion of "adverse employment action" in the context of retaliation claims in particular. *See Niswander*, 529 F.3d at 720 ("In contrast to Title VII's discrimination provision, the 'adverse employment action' requirement in the retaliation context is not limited to an employer's actions that affect the terms, conditions, or status of employment, or those acts that occur in the workplace. The retaliation provision instead protects employees from conduct that would have dissuaded a reasonable worker from making or supporting a charge of discrimination." (citation and internal quotation marks omitted)).

As to the fourth element of an indirect-evidence *prima facie* case of retaliation, the Sixth Circuit has explained that "a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action" or otherwise engaged in protected activity. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). "[T]he plaintiffs must, among other things, show 'a causal link'

between a protected activity and the adverse employment action. That is, the evidence 'must be sufficient to raise an inference that the protected activity,' such as complaining to management about racial harassment, 'was the likely reason for the adverse action.'" *Fite v. Comtide Nashville, LLC*, 686 F. Supp. 2d 735, 753 (M.D. Tenn. 2010) (quoting *Wade v. Knoxville Utils, Bd.*, 259 F.3d 452, 463 (6th Cir. 2001)). "[T]o establish such a causal connection, a plaintiff must show some type of retaliatory intent. [The plaintiff] therefore ha[s] to establish that the true motivation for [the adverse employment action(s)] were not for the reasons given, but were instead based on the fact that [s]he [engaged in protected conduct]." *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 308 (6th Cir. 2016).

"The burden of proof at the [indirect-evidence] prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007) (citing *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997)). For example, this can be met through "evidence that [the] defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights." *George v. Youngstown State Univ.*, 966 F.3d 446, 459–60 (6th Cir. 2020) (quoting *Nguyen*, 229 F.3d at 563).

Here, Defendant identifies three adverse employment actions alleged in the Complaint: (1) Supervisor Bassham assigning Plaintiff to drive unsafe trucks; (2) Defendant's HR launching an investigation of Plaintiff around the same time that Plaintiff reported her co-workers' misconduct to Supervisor Bassham; and (3) Plaintiff's supervisor, Aaron Hood, suspending Plaintiff without pay in July 2020 due to her accusations against Mr. Tucker—regarding his offensive speech in January 2020—which Plaintiff put in her EEOC complaint, filed in March 2020. (Doc. No. 19 at

15-16 (citing Doc. No. 1 at ¶¶ 73, 76, 77)). Defendant does not address the first two of these, other than to assert in wholly conclusory fashion that neither of them "even approaches the threshold of being a material adverse employment action required to establish a prima facie case of retaliation." (*Id.* at 16). This is insufficient. Defendant must make a *showing* that neither of them meets the low bar of qualifying as an adverse employment action for purposes of an indirect-evidence *prima facie* case of retaliation. Depending on the circumstances surrounding HR's launching an investigation against Plaintiff (including how invasive, reputation-harming, or menacing the HR investigation was to Plaintiff;, and depending on how unsafe (if at all) the trucks of assignment happened to be), these two alleged adverse employment actions conceivably could meet the low bar of showing that they would have dissuaded a reasonable worker from complaining about discrimination. *See White*, 548 U.S. at 71 (2006) (whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and "should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'") (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). Defendant bore the initial burden of showing (typically by pointing to evidence in the record) that they did not meet that low bar, and Defendant failed to satisfy that burden.

Defendant otherwise did not attempt in its Memorandum to address the retaliation claim to the extent that it is based on these two (the first two above-listed) adverse employment actions.[34]

---

[34] Had Defendant attempted to point to probative evidence regarding these circumstances, perhaps it could have met its burden. For example, regarding the alleged assignment of unsafe trucks, Defendant conceivably could have: (i) presented evidence that Plaintiff was not assigned bad trucks at all; or (ii) clearly identify its purported legitimate and non-retaliatory reason for the assignment to Plaintiff of whatever trucks she was assigned (be they safe or unsafe). But in its Memorandum, Defendant did neither of things, nor anything else along these lines. The most it did was to drop a footnote in the "Factual Background" section of its Memorandum, citing a declaration for the proposition that "[i]n October of 2019, the Transportation Department began to assign trucks based on the route the driver was assigned instead of basing the trucks on seniority." (Doc. No. 19 at 3 n.2). This assertion neither responds to Plaintiff's assertions that the truck

It did not for example, make a separate, alternative argument that even if these were adverse employment actions, there was some other element of an indirect-evidence *prima facie* case of employment discrimination that Plaintiff could not establish. Nor did Defendant make a separate, alternative argument that, for example, even if these were adverse employment actions, they were taken based on particular legitimate, nondiscriminatory reasons; still less did Defendant point to evidence in the record showing that any asserted legitimate, nondiscriminatory reasons were in fact the reasons. Therefore, Defendant has failed to defeat the retaliation claim at any step of the *McDonnell Douglas* framework.

As for the third alleged adverse employment action listed above, namely Plaintiff's July 2020 suspension, the Court declines to address it. The retaliation claim survives in any event, and the Court does not perceive that is required—or should expend the resources—to determine whether the retaliation claim survives as to the third alleged adverse employment action in particular. The Court declines to parse the claim that finely at the summary-judgment stage.

Accordingly, the Court will deny the Motion as to Plaintiff's claim of retaliation.

---

assignment had a retaliatory animus and rose to the level of an adverse employment action, nor shows a legitimate and non-discriminatory reason for the assignment to Plaintiff of whatever particular trucks she was assigned after engaging in protected activity (making a report to supervisor Brent Bassham).

In its Reply, Defendant belatedly tried to make an apparent argument (comprising effectively a single sentence within what is technically a longer sentence) regarding why the assignment of whatever trucks Plaintiff was assigned had a legitimate and non-retaliatory basis. (Doc. No. 24 at 5) ("Goodwill transitioned to leased trucks in 2019 and assigned them on a new route-based system, having nothing to do with Plaintiff"). This was too late; the argument needed to be made in the Memorandum, so that Plaintiff would have a fair opportunity to respond to it. Moreover, the argument was not supported by citation to anything in the record and (on closer inspection) failed to actually address specifically why Plaintiff in particular was assigned whatever trucks she actually was assigned to (be they "bad" or otherwise).

Notably, Defendant did not include anything substantive it its Reply regarding the initiation of the HR investigation.

<u>CONCLUSION</u>

For the reasons stated above, Defendant's Motion (Doc. No. 18) will be DENIED in its entirety.

An appropriate corresponding order will be entered separately.


*Eli Richardson*

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE